37

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

CRAIG LANCE DURFEE,
LINDA FAY DURFEE,

      Plaintiffs,

v.

DOUG ELLINGER
JIM McGUIRE,
ROGER LUCAS,
JERRY BROWN,
RUSSELL J. RICH,
RICK SCHULTZ, and
ED ADMIAK,

      Defendants.

_____/

CIVIL ACTION
NO. 02-CV-10041-BC

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS ELLINGER, MCGUIRE, LUCAS, AND BROWN'S
MOTION FOR SUMMARY JUDGMENT**
(Dkt. 34)
**AND DEFENDANTS ADAMIAK, RICH AND SCHULTZ'S
MOTION FOR SUMMARY JUDGMENT**
(Dkt. 41)

## I.    RECOMMENDATION

**IT IS RECOMMENDED** that Defendants Ellinger, McGuire, Lucas and Brown's

Motion for Summary Judgment be **GRANTED**; and that

Defendants Adamiak, Rich and Schultz's Motion for Summary Judgment be

**GRANTED IN PART AND DENIED IN PART** as follows: **GRANTED** as to Defendants

Adamiak and Schultz, and **DENIED** as to Defendant Rich.

## II.   **REPORT**

### A.  Introduction

The above-entitled motions are before the undersigned Magistrate Judge pursuant to an order of reference from U.S. District Judge David M. Lawson for general pre-trial case management. (Dkt. 11.) Plaintiffs filed responses to the motions, including affidavits (Dkts. 43-46), and Defendants filed reply briefs. (Dkts. 47, 48, 50.)  Without seeking leave of Court, Plaintiffs subsequently filed a "supplemental response and reply." (Dkt. 52.) Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), and because no party requested oral argument, these motions are ready for Report and Recommendation.

### B.  Background

This case arises out of the execution of a search warrant in Alcona County, Michigan, in February 1999.  Plaintiffs Craig and Linda Durfee are husband and wife, and their *pro se* complaint alleges violations of their First, Fourth, Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I), as well as claims of false imprisonment, false arrest, and gross negligence brought under Michigan law (Count II). (Compl., Dkt. 1.)  Plaintiffs are residents of Lincoln, Michigan, where they have owned and operated Durfee's Village Restaurant for the past twenty years. (Dkt. 46 at 2.)  They have three children, including a teenaged son, Justin.  This lawsuit arises out of events which occurred on February 18, 1999, when Plaintiffs' home and other buildings at their residence were searched by Defendants pursuant to a warrant issued by an Alcona County Magistrate.

2

Defendants are all law enforcement officials. Defendants Doug Ellinger, Jim McGuire, Roger Lucas, and Jerry Brown are members of the Alcona County Sheriff Department; Russell Rich and Rick Schultz are Troopers with the Michigan State Police ("MSP"); and Ed Adamiak is an officer with the Huron Undercover Narcotics Team ("HUNT"). All Defendants are named in their individual capacities, and Plaintiffs state that all acts described in the complaint were committed under color of Defendants' authority as police officers and while acting in that capacity. (Compl., Dkt. 1, ¶¶ 3-4, 27.)

In February 1999, law enforcement officials in Alcona County were investigating six breaking and entering incidents. On February 18, 1999, Defendant MSP Trooper Russ Rich questioned high school student Lyle Clemens in connection with the break-ins. Clemens confessed that he and two of his classmates, one of whom was Justin Durfee, Plaintiffs' son, had committed the break-ins. Clemens told Defendant Trooper Rich that all of the stolen property "had been transported back to Justin Durfee's residence in the Village of Lincoln and been stored since the time of those Breaking & Enterings in a small white building located directly next to a red horse barn on the Durfee property." (Police Report, Dkt. 46 at Ex. I.) Clemens drew a map for Trooper Rich indicating where the small white building was located, and stated that it had only been one week since he had last seen the stolen property in that building.

Later that day, Trooper Rich prepared an affidavit for a search warrant. In the affidavit, he averred that "[a]pproximately 1 week ago, Clemens saw some [of] the stolen property, listed above, being a lot of ammunition, bullets, cartridges, 2 TVs, at least 34 hand-

held CB radios, and several small propane type heaters at the Durfee residence, described above." (Search Warrant Affidavit, Dkt. 35 at Ex. 1.) The Durfee residence was described as a "white two story wooden framed house located at 306 Alger Street, in the Village of Lincoln, County of Alcona, State of Michigan, including but not limited to outbuildings, garages, shed, barns, structures, white Chevrolet pickup truck, operated or possessed by Justin Durfee." (*Id.*)

The search warrant was approved by a local magistrate and the search was conducted late that afternoon by Defendant Trooper Rich and the other Defendants. Plaintiffs were not at home when the search began; they were at the hospital with their sick infant. They arrived home to discover numerous police vehicles with no occupants parked on their property. (Compl., Dkt. 1, ¶ 7.) Plaintiff Linda Durfee stayed in the car with the child while Plaintiff Craig Durfee went into the house to find out what was happening. Upon entering the house, he claims he encountered Defendants Ellinger, McGuire[1], and Lucas, who told him he needed to talk to one of the other officers. Plaintiff claims he then went into the hallway where Defendant Rick Schultz "charged at the Plaintiff to intimidate, harass, frighten, assault, batter, violate, interrogate and threaten the Plaintiff, and told the Plaintiff that he was to sit down at the kitchen table and shut up and not interfere with their investigation or he was going to hit the Plaintiff over the head and take him to jail." (Compl. ¶ 8.) Plaintiff's complaint states that he was then thrown out of his house by Defendant Schultz while the search continued.

---

[1] Defendant McGuire's last name is incorrectly spelled McQuire in the complaint.

4

Plaintiff Linda Durfee alleges that she attempted to enter the home, carrying her sick child, and was told by Defendant Schultz that she could not enter and that "if her child was sick to take him back to the hospital" because they "were going to occupy their dwelling for a long time." (*Id.* ¶ 10.) Plaintiff was "hysterical," and eventually Defendant Schultz let her come in the house and sit at the kitchen table. (*Id.* ¶11.)

Plaintiff Craig Durfee alleges that Defendant McGuire then came outside and told Plaintiff that Plaintiff's son, Justin, had been involved in some break-ins of hunting camps, and that they were searching for the stolen items. Plaintiff, however, did not believe that the real reason his home was being searched was to look for the stolen items. Plaintiff claims that he had been aware that, for years, it had been "widely assumed" at the Sheriff's Department that he was a drug dealer (Dkt. 46 at 3), and therefore he stated to Defendant McGuire that he knew "that this was a pretext 'drug' search" of his home. (Compl., Dkt. 1, ¶12.) Plaintiff alleges that Defendant McGuire responded by nodding his head affirmatively. (*Id.*)

Plaintiff states that Defendant Lucas then came out of the house and asked Plaintiff if he had a key for "Justin's white shed," to which he answered that he did not.[2] Defendant Lucas then asked for a hammer or a pry bar so he could get into the white building where he believed stolen property was hidden. After finding several stolen items in the white building, Defendant Lucas asked Plaintiff Craig Durfee if he knew where the rest of the stolen property was located, and Plaintiff responded that he did not but that he would talk to Justin

---

[2]The complaint states that the white building is located on an adjacent parcel of property which is not part of Plaintiffs' "marital premises." (Compl. ¶ 13.)

5

and find out. (*Id.* ¶ 15.) Defendant Rich then instructed Plaintiff to go to the Sheriff's Department with Defendant McGuire and talk to his son, who was in custody there. Plaintiff states that he asked Defendants Rich and Lucas if they would stop searching his home and premises until Plaintiff could speak to his son, and they agreed to stop. (*Id.* ¶ 16.) However, while Plaintiff was at the Sheriff's Department speaking to his son, who told him that the rest of the stolen property was down by the lake on adjacent property, Plaintiff claims that the remaining officers continued the search, so that when he returned to his home, he found the entire home ransacked and much of his personal property destroyed. (*Id.* ¶ 18.)

Plaintiff Linda Durfee alleges that, while her husband was gone, Defendant Lucas intimidated and threatened her that if she did not give him the keys to her husband's private workshop, "they would trash her home, and handcuff her and put her on the couch and destroy her home, as they had done to other persons in the area around Hubbard Lake." (*Id.* ¶ 19.) She also asserts that she observed masked men with dogs searching the premises, which she was told was standard procedure. (*Id.* ¶ 23.) Plaintiffs claim that Defendants ultimately broke into the private work shop, and proceeded to inventory all of the property therein. (*Id.* ¶ 20.) Plaintiffs further claim that a masked man came out of Plaintiffs' barn and demanded the keys to the shed behind the garage or he would kick the door in.

Plaintiffs allege that Defendant Schultz stated to them that he knew what they were doing was illegal, but that they were nevertheless going to continue the search and do whatever they wanted, because "most people were just happy to get things over with and did not have the means or ways to sue them for their wrongful actions." (*Id.* ¶ 22.)

6

At the conclusion of the search, Plaintiffs allege that Defendants, who never showed them a copy of a search warrant, tabulated the property that they were going to remove from the premises, and that the list included many items of Plaintiffs' personal property that Defendants admitted were not items stolen in the break-ins. Plaintiffs state that their personal property was finally returned after several months. (*Id.* ¶ 24.)

Plaintiffs claim that after the search, Defendants "and their employs" continued to harass, intimidate, and violate Plaintiffs' civil rights at their place of business and elsewhere around Lincoln, Michigan. (*Id.* ¶ 25.) No specific incidents of such conduct, however, are alleged.

As a result of Defendants' alleged actions, Plaintiffs claim to have suffered "great grievous physical and psychological, and emotional harm distress, and mortification, mental anguish, physical suffering, all of which continues to date . . . ." (*Id.* ¶ 27.) Further, Plaintiffs claim that through the "negligence and gross negligent acts of the Defendants willfully, wantonly and reckless and/or maliciously and/or wrongfully done to the Plaintiffs and without any probable or reasonable cause, said Defendants did cause the Plaintiffs to be imprisoned, harassed, threatened and intimidated, humiliated, and suffer damages as hereinbefore set forth." (*Id.* ¶ 35.)

### C.  Motion Standards

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, and will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

7

All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In responding to a motion for summary judgment, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court may rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

8

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D.  Arguments of the Parties

### 1.  Defendants Ellinger, McGuire, Lucas and Brown

Alcona County Sheriff's Department Defendants Ellinger, McGuire, Lucas and Brown ("the Sheriff's Department Defendants") explain that at the same time Defendant MSP Trooper Rich was investigating breaking and entering complaints in Mitchell Township, they were investigating breaking and entering complaints near the Village of Lincoln. (Mot., Dkt. 34 at 2.) After Defendant Trooper Rich obtained the confession from Lyle Clemens, he applied for and received the search warrant and the Sheriff's Department Defendants assisted in its execution.

The Sheriff's Department Defendants argue that they are entitled to summary judgment on Plaintiffs' Fourth Amendment claims because the facts show that they reasonably relied on a facially valid warrant and that the search was conducted in a reasonable manner. With discovery now closed, Defendants point to Plaintiffs' lack of evidence to verify the claims made in the complaint that the house was ransacked and property was damaged or destroyed. Defendants further assert that neither preventing

9

Plaintiffs from entering the house nor requiring them to remain at the kitchen table during the search rose to the level of a Fourth Amendment violation.

As to the remaining federal claims, they assert that the First and Fourteenth Amendment claims are subsumed in the Fourth Amendment claims, and that any Eighth Amendment claims must be dismissed because that amendment only applies to incarcerated persons.

Defendants also contend that they are entitled to summary judgment on the basis of qualified immunity. They argue that they had an objectively reasonable belief that the search warrant adequately identified the place to be searched and the items to be seized, and that, to the extent any actions taken when executing the search "might questionably violate constitutional rights," they had a reasonable albeit mistaken belief that the actions were allowed under the law. (*Id.* at 4.)

Regarding the state law claims, Defendants assert that the claims are barred either by Michigan's two-year statute of limitations for tort claims, MICH. COMP. LAWS § 600.5805(2); by Michigan's two-year statute of limitations for allegations of misconduct against a sheriff or sheriff's deputies, MICH. COMP. LAWS § 600.5805(6); by governmental immunity, MICH. COMP. LAWS § 691.1407(2); or by state case law holding that no such claims lie against an officer who merely executes a warrant which is fair on its face and was issued by a court having proper jurisdiction. (*Id.* at 4-5.)

In support of their motion, the Sheriff's Department Defendants have attached a copy of the Affidavit for Search Warrant and Search Warrant Return (Br. in Supp. of Mot., Dkt.

10

35 at Ex. 1); an affidavit by Defendant Sergeant McGuire stating *inter alia* that the property was not searched for drugs, but for the stolen property from the break-ins (Ex. 2); and an affidavit by Defendant Sheriff Ellinger similarly stating that the property was not searched for drugs, and also giving information as to two subsequent contacts between the Sheriff's Department and the Durfee family which occurred in April and May 1999 and were unrelated to the subject matter of this complaint (Ex. 3).

### 2.  Defendants Adamiak, Rich and Schultz

Defendants Adamiak, Rich and Schultz assert, as did the Sheriff's Department Defendants, that Plaintiff's federal claims are appropriately brought solely under the Fourth Amendment, that the state law claims are barred by the statute of limitations, and that summary judgment is warranted on the basis of qualified immunity. (Mot., Dkt. 41 at 2-3 (explicitly incorporating by reference the Sheriff's Department Defendants' motion).) Additionally, these defendants argue that Plaintiffs' complaint should be dismissed pursuant to Rule 37 of the Federal Rules of Civil Procedure for failure to comply with this Court's discovery order of February 28, 2003, and for failure to appear for their depositions. (*Id.* at 3.) Defendants' brief in support states that the "defendants have denied under oath the allegations made by plaintiffs," and refers to exhibits 1-3, but no exhibits are attached to the motion or brief ultimately filed with the court.[3] (Br. in Supp., Dkt. 41 at 2.)

---

[3]When this motion was originally filed, seven exhibits were attached. However, the motion and accompanying brief were stricken from the record for lack of an original signature. This error was rectified, and the motion refiled. That motion and brief, although properly signed, contains no exhibits. I conclude that counsel's inadvertent failure to include the exhibits previously sought to be filed should not preclude the Court from considering those exhibits.

11

### 3.   Plaintiffs' Response

Plaintiffs filed responses to each of the motions (Dkts. 43 & 44), a joint affidavit swearing that they have personal knowledge of all information contained in their responses and exhibits (Dkt. 45), and a 16-page memorandum of law to which are attached 15 exhibits (Dkt. 46).

Plaintiffs first state that the "essence" of their *pro se* complaint is that "the Defendants violated the Fourth Amendment and state tort law when they obtained a search warrant without probable cause and then executed the warrant on the Plaintiffs' residence on February 18, 1999." (Dkt. 43 at 1.) Plaintiffs concede that their federal civil rights claims are governed by the Fourth Amendment, and therefore abandon any claims purportedly brought under the First, Fifth, Eighth, or Fourteenth Amendments. (Dkt. 46 at 2, n.1.) Plaintiffs further concede that their state law claims of false imprisonment and false arrest are barred by the two-year statute of limitations, and that Defendant Sheriff Ellinger is absolutely immune from suit for any state law claims pursuant to Michigan Compiled Laws § 691.1407(5). (*Id.*) The remaining claims therefore are the Fourth Amendment claims against all Defendants and state law claims of gross negligence against all Defendants except Defendant Ellinger.

Plaintiffs' arguments with regard to their Fourth Amendment claims are that summary judgment is not proper because genuine issues of material fact exist (1) as to whether Trooper Rich lied to obtain the search warrant, and (2) as to whether all Defendants "behaved unreasonably in executing the facially valid search warrant." (*Id.* at 8.) Regarding the

12

former, Plaintiffs point to the specific language in exhibit one of the Sheriff's Department

Defendants' brief, the search warrant affidavit, where Defendant Rich averred to the

magistrate that Lyle Clemens confessed that he last saw the stolen property a week ago "at

the Durfee residence." Plaintiffs then compare that assertion to Defendant Trooper Rich's

own police report, which states the following:

> LYLE CLEMENS advised U/O[Undersigned Officer] that all of the property
> had been transported back to JUSTIN DURFEE'S residence in the Village of
> Lincoln and been stored since the time of those *Breaking & Enterings* **in a
> small white building located directly next to a red horse barn on the
> DURFEE property.** He further advised the last that he had seen it, it was
> approximately one week ago and **at that time the property was still
> maintained in the white storage shed next to the large red barn.** LYLE
> CLEMENS drew a rough sketch of the layout of the DURFEE family
> residence and **showed U/O which building had contained the property
> when he saw it last.**

(Tpr. Rich's Supp. Incident Report dated Feb. 20, 1999, Dkt. 46 at Ex. I (emphasis added).)

Comparing the facts presented in these two documents, Plaintiffs argue that Defendant Rich

knowingly or recklessly misrepresented in the affidavit that Lyle Clemens saw the stolen

property at "the Durfee residence," rather than truthfully stating that Clemens saw the stolen

property in a specific white building near a horse barn on the Durfee property, so as to

broaden the scope of the search to include Plaintiffs' house. (Dkt. 46 at 10.)

Citing *Hill v. McIntrye*, 884 F.2d 271 (6th Cir. 1989), Plaintiffs contend that because

this is a § 1983 action, as opposed to a criminal appeal, it is up to a jury, not the district court,

to determine whether Defendant Rich exercised the proper degree of care when applying for

the search warrant and whether the magistrate issuing the warrant would have found probable

cause to search the home if the affidavit had contained the truth instead of the false statement.[4]  (Dkt. 46 at 9-10.)

Regarding the Fourth Amendment claims against the remaining Defendants, Plaintiffs state that they do not challenge the entry onto the property because those officers were relying on a facially valid warrant. (*Id.* at 11.) Plaintiffs further state that they "do not allege that any one incident, e.g., detention during the search or verbal threats to the Plaintiffs, crossed the Fourth Amendment line." (*Id.* at 12.) Instead, they assert that the manner of the search was not objectively reasonable under the Fourth Amendment when one considers the totality of the following circumstances of the search: (1) Defendants' use of a drug search dog to conduct a search for stolen property; (2) the use of verbal threats which Plaintiffs claim were unnecessary; (3) the continuation of the search during Plaintiff Craig Durfee's absence contrary to the assurance he was given that the search would be suspended; and (4) the statements allegedly made by Defendants McGuire and Schultz acknowledging that their

---

[4]Plaintiffs acknowledge that their complaint did not specifically allege as a factual basis for their Fourth Amendment claims the assertion that Defendant Rich either knowingly or recklessly included false information in the warrant affidavit, and therefore they ask for leave of Court to amend the complaint if this error is fatal to bringing the claim forward. I suggest that amendment is unnecessary for several reasons. First, Plaintiffs did allege in their complaint that Defendants wrongfully and illegally entered the house and that there was no probable cause to search the house. (Compl. ¶¶6, 15 & 35.) Second, federal courts are required to liberally construe the pleading of a *pro se* plaintiff and hold it to a less stringent standard than a similar pleading drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Third, it is entirely possible that Plaintiffs were unaware of the discrepancy between the search warrant affidavit's recitation of Clemens's statement and the police report's recitation thereof until the Sheriff's Department Defendants attached the search warrant affidavit to their motion for summary judgment, especially considering the complaint's allegation that "Defendants never produced any search warrant to the Plaintiffs at any time for the search of their premises while they were searching the premises." (Compl. ¶21.) Fourth, Defendant Rich has filed a thorough reply on the merits of this claim which begins by stating that Plaintiffs' failure to include the factual basis for this claim in the complaint "should not hinder this court from disposing of the claim because clearly there was probable cause." (Dkt. 47 at 2.)

actions were illegal. (*Id.* at 12-13.) Plaintiffs therefore contend that "genuine issues of material fact exist as to whether it was objectively reasonable to search Plaintiffs' home, to threaten Plaintiffs, and to damage their personal property." (*Id.* at 14.)

Plaintiffs attached to their response numerous documents which purport to show that Defendants' motivation for obtaining the warrant for the home itself and conducting the search in such a manner was a long-held belief by law enforcement personnel in that area that the Durfees are drug dealers. Plaintiffs provide several signed "statements"[5] from various people to support their argument that this false rumor got its start in 1992 when Plaintiff Craig Durfee's own sister, who suspected that her brother was involved with drugs, hired a private detective to investigate Plaintiffs. (*See* Stmt. of Reeta Schroeder, Dkt. 46 at Ex. C.) One of these statements is by Edward Schroeder, who states that he was the Alcona County Sheriff in 1992, and that a private investigator came to him during that time asking questions about Craig Durfee, his ownership of property in the area, and about his involvement with drugs or guns. (*Id.* at Ex. D.) Another is by a person who states that he was formerly employed at the Alcona County Sheriff's Department, and that during his employment there he was told by other employees that Craig Durfee was a drug dealer. (*Id.* at Ex. F.)

Plaintiffs also provide signed statements by their son, Justin Durfee, as well as the two other teenagers investigated in relation to the break-ins, stating that when they were

---

[5]These "statements" are not in the form usually seen accompanying motions or responses. However, each is dated, signed and ends with the declaration "the above statement is true." Although not explicit, I conclude that the person making the "statement" expresses through this declaration the intention of signing under the penalties for perjury. This is the functional equivalent of the jurat accompanying affidavits, and I therefore conclude that these "statements" should be considered as such.

15

questioned by MSP Trooper Estlack, Defendant McGuire, and Defendant Lucas, they were specifically asked if they had any information or knowledge about Craig Durfee using or selling drugs. (*Id.* at Exs. L-O.) In addition, Plaintiffs point to Defendant Trooper Rich's admission in his response to Plaintiffs' interrogatories that he does "recall some conversation about the plaintiff's possible involvement with drugs." (Dkt. 38, Ex. 1, ¶ 16.)

Regarding their state law claims of gross negligence, Plaintiffs merely state that the standard of proof for establishing a claim of gross negligence is "no less stringent" than that required for Fourth Amendment claims, and therefore their arguments with regard to the Fourth Amendment claims necessarily serve to demonstrate that genuine issues of fact remain regarding the issue of gross negligence as well. (*Id.* at 15.)

Finally, with regard to Defendants' argument that Plaintiffs' case should be dismissed as a sanction for discovery abuses, Plaintiffs assert that they fully complied with the Court's discovery order and only refused to attend depositions which were noticed for a date beyond the discovery cut-off, which they allege was not unreasonable in light of the fact that Defendants had over one year to depose them prior to the cut-off date and failed to do so. (*Id.* at 15.)

### E.  Analysis & Conclusions

### 1.  Qualified Immunity

All defendants claim entitlement to summary judgment on the federal claims based upon qualified immunity. The U.S. Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

*Greene*, 310 F.3d at 894.

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for

17

summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086,

1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir.

1986)). When raised after discovery, "the defendant is entitled to summary judgment if

discovery fails to uncover evidence sufficient to create a genuine issue as to whether the

defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct.

2806, 86 L. Ed. 2d 411 (1985).

### 2.   Fourth Amendment Claim Against Defendant MSP Trooper Rich

Plaintiffs contend that Defendant Rich is not entitled to summary judgment because

there is a disputed issue of material fact for a jury to decide as to whether Defendant Rich

either deliberately or recklessly stated in the warrant affidavit that Lyle Clemens saw the

stolen property at "the Durfee residence," rather than in the small white building next to the

horse barn. (Dkt. 46 at 9-10.)

Counsel for Defendant Rich asserts that Defendant Rich is entitled to summary

judgment on Plaintiffs' claim that he included false information in the warrant affidavit,

because "[a]t best the statement lacks precision as to the exact location on the Durfee

property where the goods were last seen." (Def. Rich's Reply, Dkt. 47.)

In *Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989), a case cited by all parties, the

plaintiffs' house was broken into and searched by City of Detroit police officers pursuant to

a judicially-issued search warrant. Plaintiff and her two minor children were home at the

time, and one of the children was detained at gunpoint during the search. *Id.* at 272. The

warrant affidavit had been prepared by Officer McIntyre based on an informant's description

18

of a drug house, and although plaintiffs' house only matched "four of seven key features
included in the informant's description," Officer McIntyre had concluded that it was the
correct house.[6]  Upon completing the search, however, the officers "became convinced that
they were not in a drug house and discontinued" their efforts. *Id.* at 274. The plaintiffs sued
Officer McIntyre under § 1983, claiming a Fourth Amendment violation. The Sixth Circuit
explained that

> the Hills attack the very validity of the warrant on which their house was
> searched. An action under § 1983 does lie against an officer who obtains an
> invalid search warrant by making, in his affidavit, material false statements
> either knowingly or in reckless disregard for the truth. *Donta v. Hooper*, 774
> F.2d 716, 718 (6th Cir. 1985) (per curiam), *cert. denied*, 483 U.S. 1019, 107 S.
> Ct. 3261, 97 L. Ed.2d 760 (1987).  This standard originates in *Franks v.
> Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), a
> suppression case in which the Supreme Court defined the Fourth
> Amendment's guarantee in the context of search warrants issued on the basis
> of false affidavits:  only if "a false statement [was made] knowingly and
> intentionally, or with reckless disregard for the truth" and if, "with the
> affidavit's false material set to one side, the affidavit's remaining content is
> insufficient to establish probable cause," is there a constitutional violation
> under the Fourth Amendment. *Id.* at 155-56, 98 S. Ct. at 2676.  While the
> Court is necessarily the factfinder in a *Franks* suppression hearing preliminary
> to a criminal trial, **in a § 1983 action factfinding under the *Franks* standard
> is the province of the jury.** *Hindman v. City of Paris, Tex.*, 746 F.2d 1063,
> 1067 (5th Cir. 1984).  Indeed, in a recent § 1983 case our Circuit has held that
> **the question whether the judicial officer issuing the warrant would have
> done so even without the knowingly or recklessly false statement is one for
> the jury**, and we remanded the issue for trial. *Yancey v. Carroll County*, 876
> F.2d 1238 (6th Cir. 1989).

*Id.* at 275-76 (emphasis added).  The Sixth Circuit then concluded that the district court had
improperly granted a directed verdict for Defendant McIntyre, especially considering that he

---

[6]The four matching features were: "location south of East Jefferson on Philip Street, four windows,
gray pillars, and no garage." *Id.* at 276.

had given three different explanations for how he had arrived at the conclusion that the

plaintiffs' house was the drug house described by the informant – one explanation was given

in the warrant affidavit, a different explanation was given in his deposition testimony, and

yet another explanation was given at trial. *Id.* at 276. The court concluded that

> [i]t is up to a jury, not a judge, to decide whether the pillars and the lack of a
> garage are such salient features that they would make it less than reckless to
> select the house that exhibited them. Furthermore, it is up to a jury, not a
> judge, to evaluate McIntyre's decision not to ascertain which house's utilities
> were in Amy's name: the existence of a good reason to hurry does not make
> this less a question of fact. And finally, the Hills are entitled to attempt to
> convince a jury that McIntyre was reckless not merely in selecting the wrong
> house but selecting any house.

*Id.* at 276.

Although *Hill v. McIntyre* is still relied upon when a *Franks* issue is raised in a civil

rights suit under § 1983, the Sixth Circuit emphasized in *Vakilian v. Shaw*, 335 F.3d 509 (6th

Cir. 2003), that *Hill* must be modified somewhat when a defendant asserts the defense of

qualified immunity, which was not raised in *Hill*. The *Vakilian* court stated:

> To overcome an officer's entitlement to qualified immunity, however, a
> plaintiff must establish: (1) a substantial showing that the defendant stated a
> deliberate falsehood or showed reckless disregard for the truth and (2) that the
> allegedly false or omitted information was material to the finding of probable
> cause. *See Hill*, 884 F.2d at 275 (applying test set forth in *Franks v. Delaware*,
> 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1973), to evaluate a § 1983
> claim)[.]  In other words, Vakilian must show that the judge would not have
> issued the warrant without the allegedly false material.
>
> . . . Although in *Hill* we vacated a directed verdict in favor of the defendant
> officer and held that the question of "whether the judicial officer issuing the
> warrant would have done so even without the knowingly or recklessly false
> statement is one for the jury," qualified immunity was not at issue. *Id.* at 276.
> Where qualified immunity is asserted, the issue of probable cause is one for
> the court since "the entitlement is immunity from suit rather than a mere

defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227-28, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)[]; *see also Burda Bros., Inc. v. Walsh*, 22 Fed. Appx. 423, 432 n.8 (6th Cir. 2001) (unpublished opinion) ("It is clear that in *Hill*, as in *Yancey* (which is cited in *Hill*), the issue is one for the jury only when the evidence creates a genuine issue of material fact for trial."). Only where the evidence creates a genuine issue of material fact should the matter proceed to trial.

*Vakilian*, 335 F.3d at 517 (citations omitted).

### a.   Whether Plaintiffs Have Made a Substantial Showing that Defendant Rich Stated a Deliberate Falsehood or Showed Reckless Disregard for the Truth

As previously explained, Plaintiffs assert that Defendant Rich knowingly, or at least with reckless disregard for the truth, stated in the search warrant affidavit that Lyle Clemens saw the stolen property at "the Durfee residence," and omitted the truthful statement that Clemens said he saw the property "in a small white building located directly next to a red horse barn on the Durfee property," as was correctly noted in his police report. Plaintiffs further point to the omission from the search warrant affidavit of the fact that Lyle Clemens went so far as to draw a map of the Durfee property in order to specifically pinpoint for Defendant Rich the location of the small white building next to the red horse barn which contained the stolen property. Plaintiffs contend that the inclusion of the false statement and the omission of the correct information were a deliberate attempt on the part of Defendant Rich to secure a warrant to search Plaintiffs' home for drugs. Plaintiffs, who are proceeding *pro se*, have each provided affidavits verifying their personal knowledge of the facts as alleged in their response and also have attached to their motion response signed statements from several individuals in support of Plaintiffs' claims. Further, Plaintiffs point to their allegation that a drug dog was called in to participate in the search, as well as a drug

21

enforcement officer, Defendant Adamiak, as further support. Plaintiffs have also provided

a signed statement from an individual who states that she heard the call go out on the police

radio for a canine unit to come to 306 Alger Street, and that she saw the canine unit as it was

en route to Plaintiffs' house. (Dkt. 46 at Ex. J.)

Defendant Rich, on the other hand, has not provided the Court with so much as an

affidavit. Instead, counsel for Defendant Rich makes the following wholly conclusory

assertion:

> the only allegation of falsity in the affidavit is Trooper Rich's statement that
> Lyle Clemens saw the stolen property at the Durfee residence rather than in the
> white shed on the Durfee property. At best the statement lacks precision as to
> the exact location on the Durfee property where the stolen goods were last
> seen. It is not a deliberate falsehood, nor does it show a reckless disregard for
> the truth.

(Dkt. 47 at 5.)

Viewing the record evidence and inferences therefrom in the light most favorable to

Plaintiffs, as they are the non-moving party, *see Matsushita*, 475 U.S. at 587, I suggest that

Plaintiffs have met their burden of making a substantial showing of a disputed issue of

material fact, proper for a jury to decide, regarding whether Defendant Rich stated a

deliberate falsehood or showed reckless disregard for the truth when applying for the search

warrant, and therefore have satisfied the first step of the two-step process set forth in

*Vakilian*, 335 F.3d at 517. Furthermore, with regard to the defense of qualified immunity,

I suggest that *Hill* and *Vakilian* demonstrate that Plaintiffs' allegations are sufficient to make

out a violation of the Constitution and that the right at issue was clearly established. *See*

*Saucier*, 533 U.S. at 201.

22

**b. Whether the Allegedly False or Omitted Information was Material to the Finding of Probable Cause**

The second step under *Vakilian* requires this Court to determine if there is a genuine issue of material fact regarding whether the warrant would have issued were it not for the deliberate or reckless falsity. In other words, for purposes of this case, the question becomes, if the false information is redacted and the omitted information included, was there probable cause to search Plaintiffs' home. *See United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (when *Franks* challenge is based on the omission of material facts from the warrant affidavit, the court must consider the affidavit including the omitted portions and determine whether probable cause exists).

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has stated that "[i]t is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984).

The probable cause standard is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The Supreme Court has found that probable cause to conduct a search exists when there is "a fair probability that contraband or evidence of a crime will

23

be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Prior to 1983, a two-pronged test (known as the *Aguilar-Spinelli* test) was employed to determine whether probable cause to search existed. The first "basis of knowledge" prong required that the affidavit reveal how the information was acquired. *See Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). The second "veracity" prong required that the affidavit in support of the search warrant offer the magistrate a sufficient basis to conclude that the information was trustworthy or reliable. *Id.* In *Illinois v. Gates*, however, the Court decided that the rigid two-pronged test must be abandoned in favor of a more flexible approach which would allow the magistrate to balance all factors presented in the warrant application. *See Gates*, 462 U.S. at 238.

The more flexible method adopted in *Gates* is a "totality of the circumstances" approach applied in a "'practical, nontechnical'" way. *Id.* at 230-31 (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Using this approach, "a deficiency in one [prong] may be compensated for . . . by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233; *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

The Gates court further explained that

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

24

*Gates*, 462 U.S. at 233. Thus, the affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found at the place to be searched, but merely establish a fair probability. *United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984). However, the affidavit must state facts that provide a sufficient nexus between the contraband to be seized and the place to be searched before a warrant may be issued. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978); *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998).

In this case, the entire recitation by Defendant Rich in the search warrant affidavit of the "facts establishing probable cause or the grounds for the search" are as follows:

> That I am a Michigan State Police Trooper and have been so for the past 21 years. That I have investigated many breaking and entering crimes.
>
> That I have investigated 6 B&Es that have occurred in Mitchell Township, Alcona County, Michigan. (12 break-ins at 6 different hunting camps). That my investigation has revealed that numerous items have been stolen, as partially listed above. That on this date, 2/18/99 Lyle Clemens has confessed to breaking in to the camps, stating that Justin Durfee and John Deller were co-participants. Clemens stated that the white Chevrolet pickup truck belonging to Justin Durfee was used in the B&Es. Approximately 1 week ago, Clemens saw some the [sic] stolen property, listed above. being [sic] a lot of ammunition, bullets, cartridges, 2 TVs, at least 4 hand held CB radios, and several small propane type heaters **at the Durfee residence**, described above. The tire tread pattern left at the scene of each B&E was similar to the tread pattern of the Durfee vehicle. Affiant followed the tread patterns to a locked gate where the vehicle entered. Affiant found the property was owned by the Durfee family.
>
> Wherefore Affiant believes that the aforementioned stolen property is located at the above described premises, being the family home of Justin Durfee.

(Dkt. 35 at Ex. 1 (emphasis added).)

25

If the reference (in bold) to Lyle Clemens seeing the stolen property "at the Durfee residence" is removed as false and replaced with the correct but omitted location, that being "a small white building located directly next to a red horse barn on the Durfee property," I suggest that the magistrate would not have found probable cause to support the issuance of a warrant to search the home, but would have found probable cause only to search the small white building, as the affidavit would have contained no nexus whatsoever between the stolen items and the home. Certainly the ambiguous statement about following tire tread patterns[7] fails to provide any nexus between the stolen goods and the house itself, as the tread patterns ended at a locked gate, not at the home.

Counsel for Defendant Rich argues to the contrary that

> [t]here were dozens, if not hundreds of items stolen during the B&Es. They could have been hidden in any number of places. Clearly, there is sufficient evidence from which a reasonably prudent person could conclude that stolen property might be found anywhere on the Durfee property.

(Dkt. 47 at 5.) I find counsel's position unsupportable. Under Fourth Amendment standards governing probable cause to search, "[w]hen the police are aware of facts making a particular place a significantly more likely location for the objects sought, they must at least begin by seeking the evidence in that place." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.2 (3d ed. Supp. 2004). *See also Maryland v.*

---

[7]When Defendant Rich states in the affidavit that the "tire tread pattern left at the scene of each B&E was similar to the tread pattern of the Durfee vehicle" and that he "followed the tread patterns to a locked gate where the vehicle entered . . . property . . . owned by the Durfee family," does this mean that he followed the tread patterns from the six different theft sites to the Durfee property? If not, what does "followed the tread patterns" mean? When were they followed? From where? Moreover, even if the tread patterns were followed from each theft site, they ended at a locked gate to the Durfee property, which does not provide any nexus between the truck carrying the stolen goods and the house on the property.

26

*Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987) ("probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom"). Here, after taking Lyle Clemens's confession, Defendant Rich was aware of facts that made it significantly more likely for stolen goods to be found in the white building next to the horse barn than in the residence, and I suggest that a reasonable officer would have recognized the importance of that fact and included it in the affidavit. Furthermore, a reasonably trained officer would have been aware that the mere fact that the residence was "available" to Justin Durfee does not sufficiently link it to the stolen goods so as to justify an intrusion into the "sanctity of the home." *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (affidavit stating that a residence was "available" to a suspect failed to provide the required nexus); *Payton v. New York*, 445 U.S. 573, 601, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (emphasizing "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic").

I further suggest that even if the white building where the stolen property was seen is located near the residence, and that fact had been included in the affidavit, it would not have provided the required nexus to allow a search of the home. In *United States v. Carpenter*, ___F.3d___, 2004 WL 419906 (6th Cir. March 9, 2004) (slip op.), the search warrant affidavit in question stated the following:

> . . . Helicopter Pilot Lt Bob Crumley was conducting an aerial search of Hawkins Co[unty] when he was flying over the above described property he saw numerous Marijuana Plants growing. Near the residence.
>
> Upon information I received from Lt Crumley, there is a road connecting the above described residence to the Marijuana Plants. Having personal

27

> knowledge that Lt. Crumley is certified in the identification of Marijuana I feel
> there is probable cause to search the said residence and property and seize any
> illegal contraband found.

*Id.*, 2004 WL 419906 at *1. The warrant was issued, the residence searched, and marijuana

seized. The Sixth Circuit, however, held that the search violated the Fourth Amendment:

> [The] affidavit did not provide a substantial basis for the issuing judge's
> conclusion that probable cause existed to search the Carpenters' residence,
> because it failed to set forth sufficient facts that incriminating evidence would
> be found there, rather than in some other place.

*Id.* at *2. The court went on to explain that if the affiant had included the additional

information that "beaten paths led from the marijuana patches to the door of the residence,

and that two men had been spotted walking from the marijuana patches to the residence, the

affidavit would likely have been sufficient to establish probable cause." *Id.* However, in the

absence of any facts set forth in the affidavit to connect the nearby contraband to the house,

there was no probable cause to search the house. I suggest that the same result obtains in the

instant case, because the affidavit (as corrected pursuant to *Franks*) states no facts connecting

the stolen items to the house.

I lastly suggest that Defendant Rich's statement which appears as the final sentence

of the affidavit – that he "believes that the aforementioned stolen property is located at . . .

*the family home* of Justin Durfee" – is rendered meaningless, and nothing more than a mere

guess, once the omitted statement of Lyle Clemens is inserted in place of the false statement

that Clemens saw the items in the residence. *See United States v. Schultz*, 14 F.3d 1093 (6th

Cir. 1994) (no probable cause supported search of defendant's safety deposit box; though

officer's affidavit said that "based on his training and experience" he believed drug records

28

would be there; such assertion was nothing "more than a guess" and "cannot substitute for the lack of evidentiary nexus in this case"). Furthermore, even considering the affidavit as written, I find Defendant Rich's "belief" stated in the last sentence to be of little value in the probable cause analysis because he failed to articulate any support for that belief from his training and experience investigating theft crimes. *See, e.g., United States v. Mick*, 263 F.3d 553 (6th Cir. 2001) (officer's statement of his "experience that those who operate gambling businesses store money and records in their residence, even if their home is separate from their principal place of business" provided nexus between place to be searched and objects sought, especially where gambling was conducted at "the exposed location of [an] often unoccupied trailer"); *United States v. Caicedo*, 85 F.3d 1184 (6th Cir. 1996) (where defendant was connected with ongoing drug transportation and affiant with many years of experience in drug enforcement "listed several items drug traffickers were likely to keep at their residences," probable cause to search residence for such items was established).

### c. Conclusion

Accordingly, I suggest that Defendant Rich is not entitled to summary judgment on this claim on the basis of qualified immunity because there is a genuine issue of material fact as to whether he deliberately or recklessly included false information in the warrant affidavit and omitted other material information from the warrant affidavit, and that information was material to the finding of probable cause.

### 3. Fourth Amendment Claim of Unreasonable Manner of Search Against All Defendants

Plaintiffs claim that all Defendants "behaved unreasonably in executing the facially valid search warrant." (Dkt. 46 at 8.) Plaintiffs clarify that they do not challenge the actual entry onto the property by any defendant other than Defendant Rich, because the other officers were relying on a facially valid warrant.[8] (*Id.* at 11.) Plaintiffs further state that they "do not allege that any one incident, e.g., detention during the search or verbal threats to the Plaintiffs, crossed the Fourth Amendment line." (*Id.* at 12.) Instead, they assert that the manner of the search was not objectively reasonable under the Fourth Amendment in light of the following circumstances of the search: (1) Defendants' use of a drug search dog to conduct a search for stolen property; (2) the use of verbal threats which Plaintiffs claim were unnecessary; (3) the continuation of the search during Plaintiff Craig Durfee's absence contrary to the assurance he was given that the search would be suspended; and (4) the statements allegedly made by Defendants McGuire and Schultz acknowledging that their actions were illegal. (*Id.* at 12-13.) Plaintiffs therefore contend that "genuine issues of

---

[8]More than one month after Defendants' final reply was filed, Plaintiffs filed a document entitled a "supplemental response and reply" which argues for the first time that some of the other officers may have known of the "deception by which the warrant was obtained," and therefore these officers would not have been relying on a facially-valid warrant, and they would be liable for conducting a search of the home that they knew was not supported by probable cause. (Dkt. 52.) However, I suggest that this argument cannot be considered, as Plaintiffs were clearly informed of the filing deadlines for their responses to the motions for summary judgment (see Dkts. 40 & 42), and did not seek leave of Court to file additional documents beyond the four responsive documents they filed on July 7, 2003. (Dkts. 43-46.) Although the Court construes the contents of a document filed by a *pro se* litigant liberally, a party proceeding *pro se* is nevertheless held to the same procedural rules (such as filing deadlines) as a party represented by counsel. *See McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

material fact exist as to whether it was objectively reasonable to search Plaintiffs' home, to threaten Plaintiffs, and to damage their personal property." (*Id.* at 14.)

Defendants contend that their actions were reasonable under the law, and further claim that if any conduct did cross the line as to what is constitutionally permissible, they are entitled to qualified immunity.

I first suggest that there is no merit to Plaintiffs' argument that, even if no single act by any defendant crossed the Fourth Amendment line, the cumulative effect of the circumstances of the search presents a jury issue. Plaintiffs have cited no authority for this proposition, nor has this Court uncovered any. Therefore, Plaintiffs individual claims must either stand or fall on their own merit.

Regarding the allegation of a verbal threat by Defendant Lucas against Plaintiff Linda Durfee that he would handcuff her, put her on the couch, and destroy her home if she did not provide the key to a locked workshop so it could be searched, I suggest that Defendant Lucas is entitled to summary judgment. In the case of threats, section 1983 only applies to provide a civil rights cause of action when the threat actually results in a constitutional deprivation, and Plaintiffs have not averred that Defendant Lucas carried out his alleged threats. *See Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989); *Macko v. Byron,* 760 F.2d 95, 97 (6th Cir. 1985); *Ellis v. Ficano,* No. 94-1039, 1995 WL 764127, at \*\*13-14 (6th Cir. Dec. 27, 1995) (unpublished) ("isolated threats and verbal abuse are not violations of constitutional magnitude," and "[f]ear from spoken words is not an infringement of a constitutional right").

31

Regarding Plaintiffs' claim of damage to their personal property, Defendants correctly point out that Plaintiffs have failed to submit any evidence, such as photographs, or to provide a list of damaged items. In any event, the Supreme Court has long recognized that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979). The standard to be applied is one of reasonableness. *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989). In this case, however, where Plaintiffs have presented no evidence of such damage, I suggest that Defendants are entitled to summary judgment because the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

I further suggest that Plaintiffs' acknowledgment that Defendants (other than Tpr. Rich) relied upon a facially valid search warrant precludes any § 1983 liability stemming from allegations that the search continued during Plaintiff Craig Durfee's absence, or from the claims that two officers made statements to the effect that they knew what they were doing was illegal.

Finally, Plaintiffs' claim that Defendants' use of a dog in the execution of a search warrant for stolen property was unreasonable under the Fourth Amendment. Defendants have not addressed this specific claim in their motions. However, Defendant Adamiak stated in his response to Plaintiffs' interrogatories that he had "no knowledge of a K-9 dog," (Dkt. 38, Ex. 2 ¶ 11), and Defendant Schultz also denied the presence of any "police canines." (*Id.*, Ex. 3 ¶ 24.) To determine whether Defendants are entitled to summary judgment on the

32

basis of qualified immunity, the Court must first determine whether this allegation, viewed

in the light most favorable to Plaintiffs, shows that a constitutional violation has occurred.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).

In *Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999), the

Supreme Court tackled the issue of law enforcement officers allowing reporters to be present

when a search is being conducted. The Court stated the following regarding the boundaries

the Fourth Amendment places on officers conducting searches:

> In *Horton v. California*, 496 U.S. 128, 140, 110 S. Ct. 2301, 110 L. Ed. 2d
> 112 (1990), we held that "[i]f the scope of the search exceeds that permitted
> by the terms of a validly issued warrant or the character of the relevant
> exception from the warrant requirement, the subsequent seizure is
> unconstitutional without more." While this does not mean that every police
> action while inside a home must be explicitly authorized by the text of the
> warrant, *see Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L.
> Ed. 2d 340 (1981) (Fourth Amendment allows temporary detainer of
> homeowner while police search the home pursuant to warrant), **the Fourth
> Amendment does require that police actions in execution of a warrant be
> related to the objectives of the authorized intrusion**, *see Arizona v. Hicks*,
> 480 U.S. 321, 325, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987). *See also
> Maryland v. Garrison*, 480 U.S. 79, 87, 107 S. Ct. 1013, 94 L. Ed. 2d 72
> (1987) (**"[T]he purposes justifying a police search strictly limit the
> permissible extent of the search"**). Certainly the presence of reporters inside
> the home was not related to the objectives of the authorized intrusion.

*Wilson v. Layne*, 526 U.S. 603, 611, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (emphasis

added). Applying this reasoning to the instant case, I would be inclined to find that bringing

a canine narcotics search dog to the execution of a search warrant which authorizes a search

for items other than narcotics is a violation of the Fourth Amendment because the drug dog

is not "related to the objective of the authorized intrusion." *Id.* However, the validity of this

conclusion is unclear in light of the Sixth Circuit's pronouncement, also based upon Supreme

Court precedent, that "a canine sniff is not a search within the meaning of the Fourth Amendment." *U.S. v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998) (citing *United States v. Place*, 462 U.S. 696, 706-07, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983)).

Therefore, I suggest that, even if Defendants violated a constitutional right by conducting a canine search, qualified immunity shields them from civil damages because the right was not clearly established. In order for a right to be "clearly established," it must be established in a particularized, relevant sense: the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "[I]n the light of pre-existing law the unlawfulness must be apparent." *Id*. With regard to this claim, I am unable to find that pre-existing law made the unlawfulness of the act apparent, and therefore suggest that Defendants are entitled to summary judgment on the basis of qualified immunity.

### 4.  Gross Negligence under Michigan Law

Under Michigan's governmental immunity statute, police officers are immune from tort liability for injuries caused by them while acting in the course of their employment if, among other conditions, their tortious conduct was not grossly negligent. MICH. COMP. LAWS § 691.1407(1)-(2)(c).  Michigan's governmental immunity statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(2)(c).

34

In this case, where I have suggested that there is a disputed issue of material fact regarding whether Defendant Rich acted willfully or recklessly when he prepared the search warrant affidavit, I am compelled to conclude that it is not beyond doubt that Plaintiffs could show that his conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(2)(c). Accordingly, I suggest that Defendant Rich's motion for summary judgment on the Michigan law claim of gross negligence be denied. However, with regard to the remaining Defendants, I suggest that they are entitled to summary judgment on this claim because none of their conduct rose to the level of being so reckless as to demonstrate a substantial lack of concern for whether an injury results.

### 5. Dismissal for Discovery Abuses

Defendants Adamiak, Rich and Schultz seek the dismissal of Plaintiffs' complaint based upon their failure to appear for their scheduled depositions. Plaintiffs respond pointing out that the depositions were set after the discovery cut-off established in the Scheduling Order. The relief sought by Defendants implicates Rule 37 of the Federal Rules of Civil Procedure. The Supreme Court has affirmed the inherent power of a district court to sanction the bad-faith conduct of a party or their attorneys under Rule 37. *Chambers v. Nasco, Inc.,* 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Rule 37 has been consistently construed to require a showing of bad faith or willfulness before a court may impose the ultimate sanction of dismissal. *See Harmon v. CSX Transportation, Inc.,* 110 F.3d 364 (6th

35

Cir. 1997); *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir.

1988). In this circuit,

> [a]mong the factors to be considered in reviewing the imposition of sanctions
> for an abuse of discretion, the appellate court should consider: (1) whether the
> adversary was prejudiced by the [sanctioned] party's failure to cooperate in
> discovery, (2) whether the [sanctioned] party was warned that failure to
> cooperate could lead to [such a sanction], and (3) whether less drastic
> sanctions were imposed or considered before dismissal was ordered.

*Taylor v. Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir. 1988) (citing *Regional Refuse Systems*,

842 F.2d at 155). Dismissal is therefore the sanction of last resort and "[i]t should be

imposed only if the court concludes that the party's failure to cooperate in discovery was

willful, in bad faith, or due to its own fault." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d

546, 552 (6th Cir. 1994) (citing *Taylor*, 861 F.2d at 985).

After review and consideration of the arguments raised, I suggest that the case

dispositive relief requested is inappropriate. Defendants make no explicit showing of how

they were prejudiced by Plaintiffs' actions, and in light of their cogently briefed motion, I can

find none. Although the parties could have benefitted from better communications, I cannot

say that the Plaintiff's failure to appear under these circumstances rises to a level sufficient

to justify the imposition of a sanction characterized in this circuit to be a last resort.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and

Recommendation within ten (10) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report

and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.


CHARLES E. BINDER
United States Magistrate Judge


DATED:   March 22, 2004


Copies to:   Craig Lance Durfee and Linda Fay Durfee, 306 Alger Road, P. O. Box 234, Lincoln, MI 48740
Gretchen L. Olsen, Plunkett & Cooney, 303 Howard Street, Petoskey, MI 49770
Mark E. Donnelly, Michigan Department of Attorney General, Tort Defense Division,
    P. O. Box 30736, Lansing, MI 48909
Honorable David M. Lawson, United States District Judge