UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CRAIG LANCE DURFEE,

        Plaintiffs,

                                                                     Case Number 02-10041-BC

v.                                                           Honorable David M. Lawson

DOUG ELLINGER, JIM MCGUIRE,
ROGER LUCAS, JERRY BROWN,
RUSSELL J. RICH, RICK SCHULTZ,
and ED ADAMIAK

        Defendants.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND
CONTINUING ORDER OF REFERENCE FOR PRETRIAL PROCEEDINGS**

     This case is before the Court on the parties' objections to a report and recommendation filed by Magistrate Judge Charles E. Binder that motions for summary judgment should be granted in part, some defendants and claims dismissed, and the case allowed to proceed against the remaining defendant.  The lawsuit arises from the procurement and execution of a search warrant upon the home of plaintiff Craig Lance Durfee in February 1999.  Durfee alleges that certain police officers, including defendant Russell J. Rich, suspected him of dealing in illegal drugs.  Durfee claims that the suspicions were baseless.  However, that month Durfee's eighteen-year-old son was implicated in the burglary of several hunting camps, and Rich received information that some of the booty was stored in a shed located on or near Durfee's property.  Durfee contends that Rich intentionally misstated this information to a state magistrate judge so that he could obtain a search warrant that was overly broad so as to include the search of the Durfee home for drugs, despite a lack of probable cause to do so.  He also contends that he and his family were subjected to abuse and unpleasantness

by the officers who executed the search warrant. After reviewing the submissions and conducting a *de novo* review of the motions, responses, and report of the magistrate judge, the Court agrees that the case should be dismissed against all defendants except defendant Rich, and the matter will be referred again to the magistrate judge to ready it for trial.

I.

The magistrate judge summarized the facts, which are restated here briefly. The allegations in this case arise from a search conducted by Michigan police officials of the plaintiff's home in the Village of Lincoln, Alcona County, Michigan on February 18, 1999. The plaintiff resided there with his wife and children. At the time of the search, the children were eighteen years, three years, and six months old. There is a fact dispute whether the oldest, Justin, was residing in the household at the time.

The plaintiff alleges that local police officials suspect him of dealing in illegal drugs because his sister has been calling the local sheriff's department and the Huron Undercover Narcotics Team (HUNT) for years making false criminal reports against him. Defendant Russell J. Rich, a Michigan State Police Trooper, happened to be conducting an unrelated investigation into the burglary of some hunting cabins in the area when he learned through one of the suspects, Lyle Clemens, that Durfee's eighteen-year-old son, Justin, was involved in the thefts. The plaintiff alleges that Justin did not live at home at the time but maintained control of a white shed in the vicinity of the family residence that is actually on a neighboring plot of land. There is no evidence in the present record regarding how far the shed is from the home.

The crux of the issue found viable by the magistrate judge is the nature of the information Rich learned from Clemens, and how Rich translated that information into his sworn affidavit in

support of the warrant to search the Durfee home. On February 18, 1999, Rich questioned Clemens, a high school student, about the thefts. Clemens confessed to the crimes and stated that two others participated, including Durfee's son, Justin. He told Trooper Rich where they stashed the goods. He describes what he said to Trooper Rich:

> He [Rich] then asked me where the things were that we took. I said in Justin's white shed. He said can you draw me a map. I said yes. So I did. The map showed where the white shed is located. Then he asked me about things taken at Alcona motors. I said I knew nothing about that. Then he asked me if Justin's father, Craig Durfee, did drugs or sold drugs. I said no.

Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. H, Clemens Statement. In a report, Trooper Rich described the conversation:

> At the completion of his written statement, LYLE CLEMENS advised U/O [Rich] that all of the property had been transported back to JUSTIN DURFEE'S residence in the Village of Lincoln and been stored since the time of those ***Breaking & Enterings*** in a small white building located directly next to a red horse barn on the DURFEE property. He further advised that last that he had seen it, it was approximately one week ago and at that time the property was still maintained in the white storage shed next to the large red barn. LYLE CLEMENS drew a rough sketch of the layout of the DURFEE family residence and showed U/O which building had contained the property when he saw it last.

*Id*. Ex. I, Police Report.

Later that day, Trooper Rich prepared an affidavit for a search warrant. In his affidavit, Rich stated that the stolen property was located not in the white shed but in the "Durfee residence." He sough a warrant to search "a white two story wooden framed house located at 306 Alger Street, in the Village of Lincoln, County of Alcona, State of Michigan including but not limited to outbuildings, garages shed, barns, structures, white Chevrolet pickup truck." Defs. Ellinger, McGuire, Lucas, and Brown's Mot. Summ J. Ex. 1, Aff. for Search Warrant at 1 (grammar and punctuation errors in original). In support of that application, he averred:

> That I have investigated 6 B&Es that have occurred in Mitchell Township, Alcona County, Michigan. (12 break-ins at 6 different hunting camps). That my investigation has revealed that numerous items have been stolen, as partially listed above. That on this date, 2/18/99 Lyle Clemens has confessed to breaking in to the camps, stating that Justin Durfee and John Deller were co-participants. Clemens stated that the white Chevrolet pickup truck belonging to Justin Durfee was used in the B&Es. Approximately 1 week ago, Clemens saw some the stolen property, listed above. being a lot of ammunition, bullets, cartridges, 2 TVs, at least 4 hand held CB radios, and several small propane type heaters *at the Durfee residence, described above.* The tire tread pattern left at the scene of each B&E was similar to the tread pattern of the Durfee vehicle. Affiant followed the tread patterns to a locked gate where the vehicle entered. Affiant found the property was, owned by the Durfee family.
>
> Wherefore Affiant believes that the aforementioned stolen property is located at the above described premises, being the family home of Justin Durfee.

*Id.* at 1-2 (emphasis added). A state court magistrate approved the search warrant on Feburary 18, 1999.

Trooper Rich and the other defendants, some of whom are state police officers and others who are officers from local agencies, participated in the execution of the search warrant on the afternoon of February 18, 1999. The plaintiff arrived at the home with his wife and youngest child while the search was in progress. The plaintiff alleges that the defendants never produced the search warrant, made no effort to allow him to submit to a voluntary search of just the shed, and attempted to prevent the plaintiff's family from entering the home. The searchers ordered the family to leave or sit in the kitchen. The plaintiff alleges that the approach of an officer with a black ski mask scared the three-year-old Durfee child. The conduct of the search allegedly scared and offended the plaintiff and his family in the following manner:

> Plaintiff then went into the hallway and was confronted by Defendant Rick Schultz who charged at the Plaintiff to intimidate, harass, frighten, assault, batter, violate, interrogate and threaten the Plaintiff, and told the Plaintiff that he was to sit down at the kitchen table and shut up and not to interfere with their investigation or he was going to hit the Plaintiff over the head and take him to jail.

Pl.'s Resp. Mot. Summ. J. Ex. A, Pl.'s Answer to Interrogs. at 13.

During the search, Deputy McGuire attempted to explain its purpose to Durfee and described how Justin Durfee had stolen goods from cabins in the area. The plaintiff disagreed and stated that the search was a pretextual attempt to find drugs in the Durfee house. The plaintiff alleges that Deputy McGuire confirmed the suspicions by nodding his head and stating "that this was wrong." *Id*. at 30.

When the plaintiff failed to produce keys for the white shed, the police officers used tools to enter the building. The police officers found some of the stolen goods in the shed. An officer, apparently Deputy McGuire, asked Durfee if he knew the location of the rest of the stolen property. Durfee agreed to talk to his son to find out more information if the officers would stop the search while he was gone. According to Durfee, McGuire and Rich agreed, so Durfee left for the police station where his son had been taken into custody. Durfee learned from his son that the rest of the stolen property was "down by the lake on the adjacent property." Compl. ¶ 17. The plaintiff had the police dispatcher relay this information to the officers at his home.

When Durfee returned, he found that the officers had continued searching the premises. The officers allegedly terrorized the plaintiff and his wife during the rest of the search, specifically they "intimidated the Plaintiff/wife saying that if she did not give them the keys to her husband's private work shop that they would trash her home, and handcuff her and put her on the couch and destroy her home, as they had done to other persons in the area." *Id*. at 14. Durfee and his wife allegedly saw the police use drug sniffing dogs to search the premises and a neighbor saw dogs being transported to the Durfee residence. *Id*. Ex. J, Letter from Carrie Apsey to the Court (Feb. 24, 1999). At the request of an officer, the plaintiff unlocked the door to a workshop attached to the garage, but

he contends the entry of police officers into the shop to be breaking and entering. A masked officer also requested the keys to another shed located behind the garage and threatened to kick the shed door in. The plaintiff insists that Schultz admitted "[w]e gave a search warrant and can do what we want when there's an investigation. He stated it might not be real legal but it's like this most people are just glad its over with and don't have the means or know how to do any thing about it." Pl.'s Resp. Ex. A, Pl.'s Answer to Interrogs. at 14.

Before leaving, Durfee received a list of the property that the officers removed from the premises. The police confiscated items from three locations, "lands on searched property," the white shed, and the pickup truck of the plaintiff's son. Durfee claims the officers confiscated some property that did not belong to his son. After several months, the police eventually returned property that belonged to the plaintiff and the other family members.

Durfee believes that the police continued to harass him after the search. He cites incidents where the police continued to inquire about whether the plaintiff sold drugs when questioning the suspects to the breaking and entering activities and another individual.

On February 15, 2002, Durfee filed his two-count complaint alleging: (1) constitutional violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments and (2) state law torts of gross negligence, and false arrest and imprisonment. The Court issued an order referring all pretrial proceedings to Magistrate Judge Charles E. Binder on August 14, 2002. The county police officers moved for summary judgment on June 4, 2003, and the state police officers moved for summary judgment on June 12, 2003. After the plaintiff responded to the motions, along with affidavits, and the defendants replied, the plaintiff filed a "supplemental response and reply." The plaintiff submitted unsworn statements and letters that fail to comply with 28 U.S.C. § 1746 in support of his

response. On July 7, 2003, the plaintiff and his wife, Linda Durfee, filed a sworn affidavit representing that they have personal knowledge of the information contained in their response to the Motions for Summary Judgment, including the attached exhibits. Pursuant to E.D. Mich. L.R. 7.1(e)(2), the magistrate judge decided the motions on the briefing papers because no party requested oral argument. The magistrate judge issued a report and recommendation on March 22, 2004. The magistrate judge recommended that the Court grant summary judgment to all defendants except Trooper Rich.

Upon Linda Durfee's request, the Court dismissed Linda Durfee as a party plaintiff, along with her claims against the defendants, on April 15, 2004.

Trooper Rich and the plaintiff filed objections on April 2, 2004 and May 6, 2004, respectively. All of the officers filed responses to the plaintiff's objections.

II.

The magistrate judge reasoned that there was a genuine issue of material fact whether Trooper Rich stated a deliberate falsehood or showed reckless disregard for the truth when he submitted his affidavit. The magistrate judge also found that a jury must determine whether the false information was material to the finding of probable cause. He also found that there is a genuine issue of material fact whether Trooper Rich was grossly negligent.

With respect to the other officers, the magistrate judge reported that none of the defendants' actions when executing the search warrant violated the Fourth Amendment, and the other officers had qualified immunity because they were relying on a facially valid search warrant. He suggests that there is no merit to the plaintiff's argument that the cumulative effect of the circumstances of the search violated the Fourth Amendment. Specifically, "Plaintiffs do not allege that any one

incident, e.g., detention during the search or verbal threats to the Plaintiffs, crossed the Fourth Amendment line." *Id*. at 12.  He reasoned that the defendants' threats to the plaintiff and his family during the search were insufficient to make out a section 1983 claim because there was no actual constitutional deprivation; the defendants never carried out the alleged threats.  Next, the magistrate judge suggested that the defendants' use of drugسniffing dogs during the search was protected by qualified immunity because the scope of the Fourth Amendment right is unclear.  He considered that the use of dogs was not related to the objective of the search to find goods stolen from hunters' cabins.  On the other hand, he noted that the Sixth Circuit has held that "a canine sniff is not a search within the meaning of the Fourth Amendment."  R&R at 33-34 (quoting *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998)).

The magistrate judge found that defendant Doug Ellinger, as the county sheriff, is absolutely immune to state law claims under Michigan Compiled Laws § 691.1407(5).  The plaintiff concedes this point.  The magistrate also suggested that it would be inappropriate for the Court to sanction the plaintiff with dismissal for failure to appear for depositions after the time for discovery closed.

Finally, the magistrate judge relied on the plaintiff's response to the defendants' motions for summary judgment to narrow the issues.  Durfee abandoned claims brought under the First, Fifth, Eighth, or Fourteenth Amendments because his civil rights claims are governed by the Fourth Amendment.  He abandoned his state law claims of false imprisonment and false arrest due to the two-year statute of limitations bar.

### III.

The plaintiff objects to the recommendation, contending that the officers' behavior is not covered by qualified immunity because they should have known their actions were unconstitutional

-8-

even if the contours of the right were uncertain. The plaintiff argues that police officers who knew of the deceptive affidavit cannot rely on the search warrant. He alleges that the defendants knew that their search was pretextual and that at least some knew that the warrant was procured through misrepresentations. The plaintiff imputes to Deputy McGuire the knowledge that the warrant was improperly procured because McGuire was working with Trooper Rich and admitted that he knew there were no stolen goods in the house. The plaintiff argues that others has knowledge of deficiencies in the warrant by alleging that Lucas knew the stolen goods were in the white shed while the search of the house was underway and that Schultz admitted that the search was illegal. The other defendants allegedly knew about problems with the search as part of a conspiracy against the plaintiff because of his reputation as a drug dealer.

The plaintiff also objects to the conclusion that the statute of limitation bars some of the state law claims, and he contends that the defendants cannot enjoy the benefit of governmental immunity because they acted intentionally or with gross negligence.

The Court rejects the plaintiff's objections and adopts the magistrate judge's findings and conclusions. The magistrate judge properly analyzed the qualified immunity issue as to the defendants who participated in the search. The Court agrees generally with the plaintiff's argument that if the officers knew that the search warrant was procured by deliberate falsehoods, then they had no right to rely on it. But the plaintiff has offered no evidence whatsoever that any of the officers save defendant Rich had any knowledge of Rich's misrepresentation to the state magistrate. For instance, the plaintiff contends that Deputy McGuire is liable for the excluded information because he worked with Trooper Rich on the investigation and stated during the course of the search that he knew there were no stolen goods in the house. In the sworn response to the summary judgment

-9-

motion, the plaintiff alleges that Deputy McGuire confirmed suspicions of pretext by nodding his head and stating "that this was wrong." Pl.'s Resp. Mot. Summ. J. Ex. A, Pl.'s Answer to Interrogs. at 30. Deputy McGuire's participation in the investigation alone does not demonstrate complicity in the exclusion of information from the search warrant affidavit. Deputy McGuire did not participate in the interrogation of Clemens. Any agreement that McGuire may have expressed with the plaintiff's complaints about the search does not demonstrate that he understood the circumstances of how the warrant was procured or that he was not properly relying on the facially valid warrant. The meaning behind the statement "this was wrong" is too ambiguous to find Deputy McGuire liable for a Fourth Amendment violation, particularly because he could be referring to the subjective intent of the officers.

Similarly unpersuasive are the plaintiff's contentions concerning Officers Lucas and Schultz. The plaintiff alleges that Lucas knew that the stolen items would be found in the shed. However, Lucas reasonably could rely on the warrant to search the shed and the residence, even if he expressed doubts that stolen items would be found in the residence. Schultz allegedly "stated to the Plaintiffs that while they knew what they were doing was illegal, nevertheless they were going to continue to search all of the Plaintiffs premises." Pl.'s Resp. Ex. A, Pl.'s Answer to Interrogs. at 14. Those comments, if true, do not diminish Schultz's right to rely on the facially valid warrant. Officer Admiak, who was a member of the state drug concept unit, Huron Undercover Narcotics Team, likewise can claim the benefit of the search warrant even though it did not authorize the search for drugs. In *United States v. Bonds*, 12 F.3d 540, 571 (6th Cir. 1993), the court held that "a federal agent may 'tag along' on a state search without tainting evidence of federal crimes uncovered in the process if he has no probable cause to search which would allow him to obtain a separate

federal warrant." The same concept applies here. The magistrate found that the manner of the search was conducted properly, a finding the plaintiff did not contest. Therefore, Trooper Admiak is entitled to qualified immunity because there is no evidence that the officer unreasonably expanded the search beyond the permitted scope of the warrant.

Even if those other officers knew that the search really was intended to look for evidence of illegal drug trafficking, the absence of any knowledge of Rich's fraud allows them to look to the search warrant for their authority. In the Sixth Circuit, "an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant." *Hale v. Kart*, 396 F.3d 721, 724 (6th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 343-45 (1986)). The officers relied on a valid search warrant and their subjective reasons for conducting the search are irrelevant. *See Devenpeck v. Alford*, 543 U.S. 146, 125 S. Ct. 588, 593-94 (2004) (testing for objective reasonableness when evaluating probable cause for an arrest, holding that officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Hale*, 396 F.3d at 724 (testing for objective reasonableness when evaluating probable cause for a search).

Likewise, the magistrate judge properly analyzed the issues relating to the plaintiff's state law claims against the other officers. Under Michigan law, the magistrate judge concluded that the defendants are protected from tort liability if their conduct is not grossly negligent. Mich. Comp. Laws § 691.1407(1)-(2)(c). Michigan defined gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). Applying Michigan Law, the Sixth Circuit usually finds that a police officer does not act with gross negligence or become stripped of qualified immunity when conducting an arrest

or seizure if the conduct does not violate another's Fourth Amendment rights. *See Ahlers v. Schebil*, 188 F.3d 365, 375 (6th Cir. 1999) (holding that officer who conducted incomplete investigation was entitled to qualified immunity and was not grossly negligent where investigation produced enough evidence to support probable cause for an arrest warrant); *Monday v. Olluette*, 118 F.3d 1099, 1105 (6th Cir. 1997) (holding that an officer was entitled to qualified immunity and not grossly negligent for using "excessive force for the same reasons which demonstrate that he complied with the Fourth Amendment by acting reasonably when using pepper spray"); *McPherson v. Kelsey*, 125 F.3d 989, 994-95 (6th Cir. 1997) (holding that an officer was entitled to qualified immunity and not grossly negligent for conducting a *Terry*-stop where he had a reasonable articulable suspicion for the stop and properly conducted the stop). As noted earlier, the only evidence presented suggests that all the defendants save Trooper Rich conducted the search pursuant to a facially valid search warrant approved by a neutral magistrate for which they have qualified immunity.

The Court, therefore, will overrule the plaintiff's objections to the magistrate judge's report and recommendation.

### III.

Defendant Rich objects to the report and recommendation on two general bases: he contends that the magistrate judge improperly analyzed the Fourth Amendment claim; and he insists that there is no basis for sustaining a cause of action based on gross negligence since the plaintiff alleges only intentional conduct and there is not legally cognizable duty that has been breached.

A.

With respect to the Fourth Amendment claim, Rich contends that the evidence fails to support an allegation that the affidavit contains a "deliberate falsehood or a reckless disregard for the truth" under *Franks v. Delaware*, 438 U.S. 154, 165 (1978), but at most it shows only a lack of precision. He also contends that the Court should find as a matter of law that a magistrate judge would have issued a warrant to search the Durfee home even if he or she had been presented with accurate information because probably cause to search a shed within the curtilage of the plaintiff's property constitutes probable cause to search the house.

The Court disagrees. As to the evidence presented, the magistrate judge correctly found that there are issues of fact concerning Trooper Rich's intent and whether the warrant modified to reflect the excluded information supports a finding of probable cause to search the plaintiff's residence. The magistrate judge found that the plaintiff met the difficult burden of demonstrating evidence that Trooper Rich intended to mislead by omitting the evidence that Clemens saw incriminating items only in the white shed. The magistrate judge relied on evidence of the omitted information, and statements attached to the response that a drug agent and dog participated in the search and that the police were investigating whether the plaintiff dealt in illegal drugs. An incident report submitted by Trooper Rich stated that Clemens confessed that the stolen property was stored in the white shed and not the residence. Pl.'s Resp. to Defs. Mot. Summ. J Ex. I, Police Report. There is also evidence that Trooper Rich controlled the search, which lasted for two hours after the two caches of stolen items were found in the shed and by the lake. *Id*. Ex. A, Pl.'s Answer to Interrogs. at 18-19, 31 (Trooper Rich promised to delay the search until the plaintiff returned from speaking with Justin Durfee; Plaintiff alleges that the search continued after the stolen goods were found). Trooper Rich

does not contest the magistrate judge's finding that the drug-sniffing dogs were used during the search. Taking the evidence in the light most favorable to the plaintiff, as the Court is obliged to do at this stage of the proceedings, there is evidence that Trooper Rich had an ulterior motive to search the plaintiff's property when making the affidavit in support of the search warrant, which circumstantially indicates the officer intended to mislead.

The defendant unpersuasively argues that the magistrate judge failed to consider affidavits of officers that the search was conducted properly. These affidavits only demonstrate that there are disputed issues of fact.

On the issue of probable cause, Rich cites *United States v. Campbell*, 256 F.3d 381 (6th Cir. 2001), and *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990), in which the court found that a warrant authorizing the search of a residence permitted the search of the outbuildings within the curtilage. The defendant contends those cases justify the search of the Durfee residence in this case. This argument suffers from several flaws. First, there is no evidence in the record that the white shed, which the plaintiff contends was controlled exclusively by Justin Durfee, was within the curtilage, as that term is generally understood. *See United States v. Dunn*, 480 U.S. 294, 301 (1987) (instructing courts to consider "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by," when assessing the scope of the "curtilage" in a particular case). In fact, the evidence suggests that it was not within the curtilage: the shed was located in an area away from the home and separated from it by a red horse barn.

Second, neither *Campbell* nor *Bennett* fortifies the defendant's position. Although those cases tend to support the contention that a warrant to search a home confers authority to search outbuildings as well, the converse is not necessarily true. Probable cause is not automatic; it is case-specific and must be assessed under the totality of circumstances. *See Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Williams*, 224 F.3d 530, 534 (6th Cir. 2000) (Cole, J., dissenting) (observing that "the existence of probable cause must be determined from the totality of the circumstances specific to each case") (citing *United States v. Allen*, 211 F.3d 970, 975 (6th Cir.2000) (en banc)). Probable cause to search an outbuilding will not by itself justify a greater intrusion into living quarters in a separate residence, albeit on the same land. After all, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980).

In this case, there is a factual dispute whether there was probable cause to believe stolen property was located anywhere other than the shed. It appears from Rich's own report that the focus of the investigation of the stolen property was on the white shed; there was no information given to him that suggested the property would be located in Justin Durfee's parents' home. Viewing the facts in the light most favorable to the plaintiff, Rich misrepresented to the state magistrate that his informant had placed stolen property within the home itself. The level of intrusion that results from the entry and search of a storage shed is considerably less by all objective measures than that which invariably results from official penetration of private living space. The Fourth Amendment protects "the sanctity of the home." *Id.* at 586, 601. That is "[b]ecause 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion' stands '[a]t the very core of the Fourth Amendment.'" *Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (quoting *Kyllo v. United*

*States*, 533 U.S. 27, 31 (2001)).  In *Campbell* and *Bennett*, once probable cause justified the entry into the home, the lesser intrusion into outbuildings could be countenanced as well.  It is not sensible, however, to apply that reasoning in reverse in light of the clear Fourth Amendment precedent that protects "the sanctity of the home."

The Court, therefore, will overrule defendant Rich's objection as to the plaintiff's federal claim.  Rich's affidavit manufactured a justification to search that was unwarranted by the objective facts; expanding the scope of the search warrant beyond the storage shed to the residence cannot be justified by the authorities the defendant has cited.  Where there are factual disputes upon which the resolution of probable cause depends, summary judgment cannot be granted.  *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) (holding that "a jury trial is appropriate where reasonable disputes of material fact exist on facts underlying a probable cause determination").

B.

Rich's objection to the magistrate judge's finding on the state law claim, however, has merit. Rich argues that the gross negligence claim should be dismissed because the plaintiff actually claims that Rich intentionally lied on the affidavit.  A Michigan court has held that:

> [P]laintiff is essentially alleging an intentional, offensive touching.  Therefore, plaintiff's proper cause of action is for the intentional tort of battery, and not negligence.  *Sudul v. Hamtramck*, 221 Mich. App. 455, 458, 477; 562 N.W.2d 478 (1997).  Accordingly, the trial court properly granted summary disposition in favor of defendants on plaintiff's negligence claim.

*Smith v. Stolberg*, 231 Mich. App. 256, 259, 586 N.W.2d 103, 104-05 (1998); *see also Hog Producers v. Consumers Power Co.*, 234 Mich. App. 72, 82-83, 592 N.W.2d 112 (1999) (dismissing intentional tort claim for trespass when facts only supported negligence).  The Court agrees.  The plaintiff's complaint alleges intentional, not negligent, conduct.

-16-

Moreover, Rich did not owe a duty to the plaintiff when preparing a search warrant affidavit. The plaintiff alleges that Rich was grossly negligent by preparing the warrant that excluded material information so he could conduct a pretextual search. The tortuous duty alleged by the plaintiff is analogous to a duty that would exist in a negligent prosecution claim, namely a duty to include all relevant information when preparing an affidavit or report in support of a search or arrest warrant. *See Burns v. Reed*, 500 U.S. 478, 504 (1991) (observing that "[a]t common law, the tort of maliciously procuring a search warrant was not a species of defamation (an unintentional tort) but a form of the intentional tort of malicious prosecution."). A Michigan Court has found that no such duty exists under Michigan law when considering a negligent prosecution claim. *See King v. Arbic*, 159 Mich. App. 452, 406 N.W.2d 852 (1987). The defendant's gross negligence claim against Trooper Rich alleges the same duty alleged in *King*, a duty not recognized under Michigan law.

If Rich entered the plaintiff's property without permission and without official authority to do so, then the appropriate tort under state law would be trespass. Although the complaint might be construed generously to plead such a claim, the magistrate judge may permit an amendment if he deems it necessary.

IV.

The Court finds that the magistrate judge's determination of the issues in the parties motions was correct, with one exception noted above. Therefore, the Court will adopt the report and recommendation with one modification.

Accordingly, it is **ORDERED** that the report and recommendation of the magistrate judge [dkt # 53] is **ADOPTED IN PART**.

It is further **ORDERED** that the motions for summary judgment by defendants Ellinger, McGuire, Lucas, Brown, Adamiak, and Schultz [dkt #s 34, 41] are **GRANTED**. These defendants are dismissed from the action **WITH PREJUDICE**.

It is further **ORDERED** that the motion for summary judgment by defendant Rich [dkt # 41] is **GRANTED IN PART AND DENIED IN PART**. The gross negligence state law claim against defendant Rich is dismissed with prejudice; the plaintiff's federal claims may proceed to trial, and the plaintiff may amend his complaint to plead trespass if this is deemed necessary by the magistrate judge.

It is further **ORDERED** that the matter is referred to Magistrate Judge Charles E. Binder under the previous reference order [dkt # 11] to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).

                                          s/David M. Lawson  
                                          DAVID M. LAWSON  
                                          United States District Judge

Dated: January 6, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 6, 2006.

                                          s/Tracy A. Jacobs  
                                          TRACY A. JACOBS