UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CRAIG LANCE DURFEE,

      Plaintiff,                         CASE NO. 02-CV-10041

v.                                       DISTRICT JUDGE DAVID M. LAWSON
                                           MAGISTRATE JUDGE CHARLES BINDER

RUSSELL J. RICH,

      Defendant.
                             /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT RICH'S SECOND MOTION FOR SUMMARY JUDGMENT**
(Dkt. 67)

## I.   RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Second Motion for Summary Judgment be **DENIED**.

## II.   REPORT

### A.  Introduction

The above-entitled motion is before the undersigned Magistrate Judge pursuant to an order of reference from U.S. District Judge David M. Lawson for general pre-trial case management. (Dkt. 11.) Plaintiff filed a response to the motion on July 28, 2006. (Dkt. 68.) Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this motion is ready for Report and Recommendation.

**B.  Background**

This civil rights case arises out of the execution of a search warrant in Alcona County, Michigan, in February 1999.  The case originally involved Plaintiff's wife and several other defendants who were dismissed on January 6, 2006.  (Dkt. 62.)  Several claims were also dismissed that same day.  The sole remaining claim of the *pro se* complaint alleges that Defendant Trooper Rich violated Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights.  (Compl., Dkt. 1, Count I.)  The substantive facts are summarized in an opinion by Judge Lawson (Dkt. 62) and the Report and Recommendation previously filed by this Magistrate Judge.  (Dkt. 53.)

**C.  Motion Standards**

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure and will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where

the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In responding to a motion for summary judgment, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court may rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

A denial of summary judgment does not become the law of the case nor does it have any *res judicata* effect. *Kovacevich v. Kent State University*, 224 F.3d 806, 835 (6th Cir. 2000). "District courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on

3

which summary judgment is sought." *Id.*; *accord Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670, n.6 (6th Cir. 2006). "A renewed or successive summary judgment motion is appropriate especially if one of the following grounds exists: '(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice.'" *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).

### D. Analysis & Conclusion

Defendant's motion presents a supplemental statement of facts in which Defendant posits: "(A) There were no police dogs present during the search of the Durfee property"; "(B) Justin Durfee had unfettered access to his father's property and residence"; "(C) The white shed is on the same property as the residence"; and "(D) Trooper Rich did not lie to, or mislead, the Prosecutor." (Def.'s Mot. for Summ. Judg., Dkt. 67 at 3-6.) Since Defendant does offer at least one new piece of evidence in support of his second motion, *i.e.*, an affidavit signed by Defendant, the Court will exercise its discretion in favor of addressing the merits of Defendant's renewed arguments. *Kovacevich, supra*; *Whitford, supra*.

#### 1. Newly-submitted Evidence

Plaintiff's complaint averred that Plaintiff's wife "observed masked men with dogs searching the premises, which she was told was standard procedure . . . ." (Compl., Dkt. 1, ¶ 23.) Initially, as Judge Lawson noted, Defendant "d[id] not contest the magistrate judge's finding that the drug-sniffing dogs were used during the search." (Order Adopting Report, Dkt. 62 at 14.) However, at this juncture, Defendant has provided an affidavit stating that he did not use or see any drug-sniffing dogs on Plaintiff's property while conducting the

4

search.  (Def.'s Mot. Dkt. 67, Ex. 3, ¶ 7.)  Defendant also notes that Plaintiff and former-Plaintiff Linda Durfee admitted that there were no dogs present on the property at the time the search was conducted.  (Craig Durfee Dep., Dkt. 67, Ex. 1 at 39; Linda Durfee Dep., Dkt. 67, Ex. 2 at 17.)  Although Plaintiff continues to contest this issue, he has failed to come forward with any evidence contradicting his own deposition, his ex-wife's deposition, and Defendant's affidavit.  (Pl.'s Resp., Dkt. 68 at 14-15.)[1]

Since Plaintiff has failed to proffer any evidence contradicting Defendant's affidavit, I suggest that summary judgment for Defendant would be appropriate if this particular allegation could stand alone as a claim.  *Street, supra*; *Moore, supra*; *Guarino, supra.* However, this contention is only part of the grounds relied upon by Plaintiff in making his Fourth Amendment assertion and by Judge Lawson in denying the previous motion for summary judgment.  (Op. & Order, Dkt. 62.)

---

[1] Specifically, Plaintiff contends that Defendant's "'recollection' of not seeing any dogs is very convenient, but does not mean there [sic] were not there; . . .[i]t is impossible to believe that HUNT a narcotics unit came to the premises, without equipment necessary to identify drugs, ie [sic] a sniffing dog, etc."  (Dkt. 68 at 14.)

5

## 2. Plaintiff's Fourth Amendment Claim[2]

Although Defendant may have successfully shown that no issue of fact exists as to the presence of drug-sniffing dogs, I suggest that material issues remain on portions of the underlying factual predicates regarding whether Defendant's sworn statement was made with knowledge of its falsity or reckless disregard of the truth and whether, if removed, the affidavit could support probable cause. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (when *Franks* challenge is based on the omission of material facts from the warrant affidavit, the court must consider the affidavit including the omitted portions and determine whether probable cause exists).

---

[2]Several of Defendant's arguments do not merit extensive review because they are either a mere restatement of arguments made and addressed in Judge Lawson's previous opinion, arguments which lack relevance, or need not be resolved to decide the instant motion.

Under subparagraph (B), Defendant contends that there is no issue of fact regarding Justin Durfee's "unfettered access" to the whole property, including the residence. (Def.'s Br., Dkt. 67 at 4-5.) All agree that the white shed was Justin's. Defendant notes that Justin Durfee gave the Michigan State Police consent to search "306 Alger Street, Lincoln, MI (storage shed)." (Id. at Ex. 4.) This fact supports the notion that Justin's access was limited to the shed. Defendant states that Justin had a key to the house, had his personal belongings there, and had permission to access the house whenever he so desired. The deposition testimony of Linda Durfee does confirm that Justin had a key to the residence and that Justin had previously lived at the 306 Alger residence "off and on," but also indicates that she had "kicked him out" by the time the search was conducted. (Linda Durfee Dep., Dkt. 67, Ex. 2 at 6.) I suggest that Justin's access is not relevant. *See United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (affidavit stating that a residence was "available" to a suspect failed to provide the required nexus). However, if it should be deemed relevant, I suggest the above testimony establishes an issue of fact as to the extent of his access to the residence.

Under subparagraph (C), Defendant argues that the "white shed is on the same property as the residence." (Def.'s Br., Dkt. 67 at 5.) Defendant relies on Linda Durfee's deposition testimony where she states that she believed all the property owned by Plaintiff was one undivided parcel until after the search when Plaintiff referred to them as separate. (Id. at 5; Ex. 2 at 6-7.) I suggest that the question of whether the property was considered one parcel or separate parcels is not the salient issue; instead, the issue is whether there was probable cause to search the residence and thesub-issue is whether the white shed was within the curtilage. Judge Lawson found that the "evidence suggests that [the shed] was not within the curtilage: the shed was located in an area away from the home and separated from it by a red barn." (Dkt. 62 at 14.) For purposes of this motion, I will assume, *arguendo*, that the shed was within the curtilage of the residence.

6

Defendant now asserts that his failure to mention the white shed in the original affidavit in support of the warrant was "an inadvertent oversight." (Def.'s Mot., Dkt. 67, Ex. 3 at 2.) However, in the affidavit supporting the search warrant application, Defendant averred that Lyle Clemens confessed that he last saw the stolen property a week prior "at the Durfee residence" despite the fact that Defendant's own police report states that

> LYLE CLEMENS advised U/O [Undersigned Officer] that all of the property had been transported back to JUSTIN DURFEE'S residence in the Village of Lincoln and been stored since the time of those *Breaking & Enterings* **in a small white building located directly next to a red horse barn on the DURFEE property**. He further advised the last that he had seen it, it was approximately one week ago and **at that time the property was still maintained in the white storage shed next to the large red barn.** LYLE CLEMENS drew a rough sketch of the layout of the DURFEE family residence and **showed U/O which building had contained the property when he saw it last.**

(Tpr. Rich's Supp. Incident Report dated Feb. 20, 1999, Dkt. 46 at Ex. I (emphasis added).)

Plaintiff argues that Defendant knowingly or recklessly misrepresented in the affidavit that Lyle Clemens saw the stolen property at "the Durfee residence," rather than truthfully stating that Clemens saw the stolen property in a specific white building near a horse barn on the Durfee property, so as to broaden the scope of the search to include Plaintiffs' house. (Dkt. 46 at 10.)

Plaintiff has provided evidence to support his theory that Defendant's motivation for obtaining the warrant for the home itself and conducting the search in such a manner was a long-held belief by law enforcement personnel in that area that the Durfees are drug dealers. Plaintiffs provide several signed "statements"[3] from various people to support their argument

---

[3] These "statements" are not in the form usually seen accompanying motions or responses. However, each is dated, signed and ends with the declaration that "the above statement is true." Although not explicit,

that this false rumor got its start in 1992 when Plaintiff Craig Durfee's own sister, who suspected that her brother was involved with drugs, hired a private detective to investigate Plaintiffs. (*See* Stmt. of Reeta Schroeder, Dkt. 46 at Ex. C.) One of these statements is by Edward Schroeder, who states that he was the Alcona County Sheriff in 1992, and that a private investigator came to him during that time asking questions about Craig Durfee, his ownership of property in the area, and about his involvement with drugs or guns. (*Id.* at Ex. D.) Another is by a person who states that he was formerly employed at the Alcona County Sheriff's Department, and that during his employment there he was told by other employees that Craig Durfee was a drug dealer. (*Id.* at Ex. F.)

Plaintiffs also provide signed statements by their son, Justin Durfee, as well as the two other teenagers investigated in relation to the break-ins, stating that when they were questioned by MSP Trooper Estlack, Defendant McGuire, and Defendant Lucas, they were specifically asked if they had any information or knowledge about Craig Durfee using or selling drugs. (*Id.* at Exs. L-O.) In addition, Plaintiffs point to Defendant Trooper Rich's admission in his response to Plaintiffs' interrogatories that he does "recall some conversation about the plaintiff's possible involvement with drugs." (Dkt. 38, Ex. 1, ¶ 16.)

Defendant nevertheless argues that "there is no evidence that Trooper Rich had some ulterior motive for obtaining the search warrant for the Durfee property." (Def.'s Mot., Dkt. 67 at 6.) On the other hand, Judge Lawson already concluded "there is evidence that Trooper Rich had an ulterior motive to search the plaintiff's property when making the

---

I conclude that the person making the "statement" expresses through this declaration the intention of signing under the penalties for perjury. This is the functional equivalent of the jurat accompanying affidavits, and I therefore conclude that these "statements" should be considered as such.

affidavit in support of the search warrant, which circumstantially indicates the officer intended to mislead." (Dkt. 62 at 14.) I suggest that Judge Lawson's conclusion remains correct and that these issues of fact preclude summary judgment.

Defendant argues that my previous Report, and presumptively, Judge Lawson's Opinion and Order, were in error because they ran contrary to Sixth Circuit precedent such as *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) ("the 1990 *Bennett* case")[4] and *United States v. Campbell*, 256 F.2d 381 (6th Cir. 2001). (Def.'s Mot., Dkt. 67 at 9.) In the 1990 *Bennett* case, the defendant's residence was searched with the expectation of finding marijuana. The affiant provided information regarding heavy traffic at defendant's residence, citizen informant suspicions of drug sales there, and an anonymous tip regarding a prospective shipment of marijuana to defendant. The affidavit stated that a confidential informant had seen marijuana while at the defendant's residence; however, the informant had actually stated that when someone came to defendant's house to buy marijuana, defendant would go out to a barn to retrieve the marijuana to be sold. *Bennett*, 905 F.2d at 933. The affiant admitted that the statements regarding the confidential informant having seen marijuana in defendant's house were not true. *Id.* at 934.

The court, without further analysis, held that the lower court's finding that there were no intentionally false statements or statements made in reckless disregard of the truth was clearly erroneous. *Id.* In addition, the court found that those statements were "clearly material" to the affidavit. *Id.* Finally, the court held that without the false statements,

---

[4]As discussed later in this Report, although Defendant's motion cites the 1990 *Bennett* case, it is actually a 1999 *Bennett* case from which he quotes.

9

probable cause could not be supported. *Id.* The court thus granted the defendant's motion to suppress.

Perhaps Defendant would have rather directed the Court's attention to *United States v. Bennett*, 170 F.3d 632 (6th Cir. 1999) ("the 1999 *Bennett* case").[5] In the 1999 *Bennett* case, the Sixth Circuit held that "[a]lthough the affidavit did not swear to any illegal activity in the shop building, the shop building and residence are, for all practical purposes, one single location because the outbuilding is within the curtilage of the 'premises' for which the search warrant was issued." *Id.* at 639. In the 1999 *Bennett* case, probable cause existed to search the residence and the legal question was whether that probable cause would extend to support a search of an outbuilding located on the owner's property.[6] That, however, is not the scenario presented on the instant facts.

In the instant case, as in the 1990 *Bennett* case, Defendant admitted that the statement presented in the affidavit in support of the warrant was not true. (Def.'s Br., Dkt. 67, Ex. 3 at 2.) The issue presented in the 1990 *Bennett* case and the instant case is whether probable cause to search an outbuilding (white shed) located on an owner's property also supplies probable cause to search the owner's residence. That question was squarely answered in the negative by the Sixth Circuit in the 1990 *Bennett* case. *Bennett*, 905 F.2d at 933. I therefore suggest the 1990 *Bennett* holding controls and supports Judge Lawson's stated rationale in

---

[5] The 1999 *Bennett* case is the case actually cited internally in *United States v. Campbell*, as quoted in Defendant's brief. (Def.'s Mot., Dkt. 67 at 9-10.)

[6] Similarly, in *Campbell, supra*, where the warrant permitted search of a home and a shed located on the same property, the court held the other outbuildings within the curtilage could also be searched without exceeding the scope of the warrant.

10

denying the first motion for summary judgment. (Dkt. 62 at 16("In *Campbell* and *Bennett*,[7] once probable cause justified the entry into the home, the lesser intrusion into outbuildings could be countenanced as well. It is not sensible, however, to apply that reasoning in reverse in light of the clear Fourth Amendment precedent that protects the 'sanctity of the home.'").)

In addition, I further suggest that even if the Court were to find that the 1990 *Bennett* case does not control in this instance, summary judgment should be denied because there are factual disputes upon which the resolution of probable cause depends. *See Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) ("a jury trial is appropriate where reasonable disputes of material fact exist on facts underlying probable cause determination").

### 3. Qualified Immunity

Defendant Rich reasserts that he is entitled to summary judgment on the federal claims based upon qualified immunity. The U.S. Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's

---

[7]This reference is to the 1999 *Bennett* case.

11

mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to:

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.

*Greene*, 310 F.3d at 894.

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Defendant contends that he is entitled to qualified immunity because plaintiff cannot "prove that no reasonable officer in Trooper Rich's position would have reasonably believed

12

his conduct was lawful based upon pre-existing law." (Def.'s Mot., Dkt. 67 at 13.) Therefore, at this juncture, Defendant challenges only the "clearly established" prong of the qualified immunity test. In my previous Report, I suggested that *Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989), and *Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003), demonstrate that Plaintiff's allegations are sufficient to make out a violation of the Constitution and that the right at issue was clearly established. *See Saucier*, 533 U.S. at 201. Plaintiff has not submitted any new evidence or arguments on this ground; I suggest that conclusion remains appropriate.

Accordingly, I suggest that Defendant Rich is not entitled to summary judgment on the basis of qualified immunity because there is a genuine issue of material fact as to whether he deliberately or recklessly included false information in the warrant affidavit and omitted other information from the warrant affidavit, and that information was material to the finding of probable cause.

13

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                    s/ *Charles E Binder*
                                                    CHARLES E. BINDER
Dated: November 15, 2006                        United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Mark Donnelly, served on Craig Durfee by first class mail, and served on Judge Lawson in the traditional manner.

Date: November 15, 2006                    By     s/Jean L. Broucek
                                                                 Case Manager to Magistrate Judge Binder